UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **NATHANIEL GURTON,** | : | Case No. 1:23cv65 |
| **Plaintiff,** | : | Judge Jeffery P. Hopkins |
| v. | : | **DEFENDANTS' PROPOSED UNDISPUTED FACTS** |
| **CIAN McGRATH, et al.,** | : | |
| **Defendants.** | : | |

In accordance with Section II(F)(6)(b) of this Court's Standing Order Governing Civil Cases, Defendants Cian McGrath, Nathan Asbury, Jason T. Voelkerding, Stephen Saunders, Lisa Davis, Eliot Isaac, and the City of Cincinnati (collectively "Defendants") submit the following proposed undisputed facts in support of their Motion for Summary Judgment.

1. On January 26, 2022, Allen Gurton, Sr., resided in an apartment ("Gurton Apartment") with a number of family members including his 21-year-old son Nathaniel Gurton ("Nathaniel"). Nathaniel is the sole plaintiff in this action. (Am. Compl., Doc. 16, ¶ 15, PageID 150; Gurton Dep., Doc. 33-1, PageID 243-45).

2. On January 26, 2022, Defendant Police Officer Cian McGrath was on duty and working an assignment with the Cincinnati Police Department's ("CPD") Fugitive Apprehension Squad ("FAS"). (McGrath Dec., Doc. 38-1, ¶¶ 3, 7 PageID 409-10).

3. On January 26, 2022, Allen Gurton, Sr., was the subject of an open felony warrant for his arrest on a robbery charge. (Am. Compl., Doc. 16, ¶ 20, PageID 151; McGrath Dec., Doc. 38-1, ¶ 7, PageID 410; Doc. 38-2).

4. Shortly after 8 o'clock in the morning on that day, FAS officers wearing tactical vests with the word "Police" on the front and back approached the Gurton Apartment to take Allen Gurton, Sr., into custody. (McGrath Dec., Doc. 38-1, ¶¶ 7, 10, PageID 410-11).

5. FAS officers approached the Gurton Apartment with the understanding that Allen Gurton, Sr. was home at the time and that the apartment contained a number of individuals with histories

of violent crimes and weapons charges. (McGrath Dec., Doc. 38-1, ¶ 7, PageID 410; Asbury Dec., Doc. 39-1, ¶ 6, PageID 431).

6. Allen Gurton, Sr. was home at the time, and the FAS officers took him into custody inside his home. (McGrath Dec., Doc. 38-1, ¶ 27, PageID 418-19; Asbury Dec., Doc. 39-1, ¶ 12, PageID 434).

7. Nathaniel was home when the police arrived to take custody of his father and was arrested at the scene on a misdemeanor charge of obstructing official business. Nathaniel's older brother, Allen Jr., was home at the time as well but was not arrested on any charge. (McGrath Dec., Doc. 38-1, ¶¶ 22, 28, 30, PageID 415, 420).

8. When the FAS officers arrived at the Gurton Apartment that morning, Officer Traufler knocked on the front door and Nathaniel responded by asking "Who is it?" from his second-floor bedroom window that looks out over the front door. (McGrath Dec., Doc. 38-1, ¶ 11, PageID 411; Gurton Dep., Doc. 33-1, PageID 265).

9. The FAS officers heard the male voice asking "Who is it?" and Officer Traufler responded by announcing it was the "Cincinnati Police." When no answer came, Officer Traufler knocked on the front door again, announced "Police" again, and further stated that the officers were there for "Allen" and that "Allen" should come to the door. (McGrath Dec., Doc. 38-1, ¶¶ 11, 12, PageID 411).

10. More than a minute passed without Nathaniel or anybody else opening the door or responding to the FAS officers. During that time, Officer McGrath also knocked on the front door and received no response whatsoever. (McGrath Dec., Doc. 38-1, ¶¶ 11, 12, PageID 411; Asbury Dec., Doc. 39-1, ¶ 11, PageID 433).

11. During that time, while the officers were knocking, announcing "Police," and calling for "Allen" to come to the door, Nathaniel grabbed his vape pen and talked with his brother, Allen Jr. (Gurton Dep., Doc. 33-1, PageID 323-24, 267-68).

12. Still hearing no response to their commands, the officers knocked several more times, announcing "Cincinnati Police" and calling for "Allen" to come to the door. (McGrath Dec., Doc. 38-1, ¶¶ 11, 12, PageID 411; Asbury Dec., Doc. 39-1, ¶ 11, PageID 433).

13. As Officer McGrath knocked further and repeated his commands, Nathaniel and Allen Jr. stood in the area near the front entryway but did not open the door or respond to Officer McGrath's commands. (Asbury Dec., Doc. 39-1, ¶¶ 7-9, PageID 431-433).

14. Sergeant Nathan Asbury was supervising the FAS officers at the scene that morning. (Asbury Dec., Doc. 39-1, ¶ 4, PageID 430-31).

15. As Officer McGrath knocked on the front door, Sergeant Asbury was positioned on the side of the apartment at a window that afforded him a view inside the apartment at the area near the front door. (Asbury Dec., 39-1, ¶¶ 7, 11, PageID 431, 433-34).

16. As Officer McGrath continued to knock and announce "Cincinnati Police" and call for "Allen," Sergeant Asbury perceived individuals in the vicinity of the front door but not opening the door or otherwise responding to Officer McGrath's commands. (Asbury Dec., 39-1, ¶ 7-9, PageID 431-33).

17. After approximately another minute ticked by, with the individuals inside not coming to the door as directed by Officer McGrath, Sergeant Asbury opened the side window and commanded the two adult males at gunpoint standing near the front door to open the door and to show their hands. (Asbury Dec., 39-1, ¶ 9, PageID 432-33).

18. Finally, more than two minutes after Nathaniel asked "Who is it?" from his bedroom over the front door, Allen Jr. opened the front door but not wide enough to permit Officer McGrath an unobstructed view of who was inside the apartment. (McGrath Dec., Doc. 38-1, ¶ 18, 20, PageID 413-14).

19. Officer McGrath kept the door open with his foot and issued multiple orders for Allen Jr. to show him his hands. (McGrath Dec., Doc. 38-1, ¶ 18, PageID 413).

20. Allen Jr. showed Officer McGrath he had nothing in his hands, at which point FAS officers detained him outside the apartment until after Allen Gurton, Sr., the subject of the felony arrest warrant, was located inside and taken into custody. (McGrath Dec., Doc. 38-1, ¶ 20, PageID 414).

21. When Allen Jr. opened the front door, Nathaniel was standing approximately one to three feet behind Allen Jr. clenching an object in his right hand. (McGrath Dec., Doc. 38-1, ¶¶ 21, 24, 25, PageID 415-17; Gurton Dep, Doc. 33-1, PageID 324-25).

22. Standing approximately three to five feet from Nathaniel with nothing between them except for his ballistic shield, Officer McGrath told Nathaniel more than once to show his hands. (McGrath Dec., Doc. 38-1, ¶ 21-22, PageID 415).

23. Nathaniel did not release the object from his hand during Officer McGrath's issuance of commands to show his hands. (McGrath Dec., Doc. 38-1, ¶ 25, PageID 417; Gurton Dep., Doc. 33-1, PageID 324-25).

24. Officer McGrath, from behind his ballistic shield, reached through the front doorway to grab Nathaniel by his shirt, as Nathaniel continued to clench an object in his right hand. (McGrath Dec., Doc. 38-1, ¶¶ 24-25, PageID 415-17).

25. Nathaniel moved away from Officer McGrath back into the apartment with an object still in his right hand. (McGrath Dec., Doc. 38-1, ¶¶ 24-25, PageID 415-17; Gurton Dep, Doc. 33-1, PageID 338-39).

26. Officer McGrath grabbed Nathaniel and pulled him towards him, using the technique of leverage (balance) displacement to bring Nathaniel to the ground. As he did that, Nathaniel reached for the door frame with his right hand, still holding onto an object in that hand. (McGrath Dec., Doc. 38-1, ¶¶ 24-25, PageID 415-17).

27. Officer McGrath pulled Nathaniel towards him and to the ground where he was handcuffed, unintentionally scratching Nathaniel's head with his ballistic shield in the process. (Gurton Dep., Doc. 33-1, PageID 296-98, 307-08; McGrath Dec., Doc. 38-1, ¶ 26, PageID 418).

28. The only injuries Nathaniel sustained or sought treatment for, physical or mental, were superficial abrasions or lacerations requiring two band-aids. (Gurton Dep., Doc. 33-1, PageID 296-98, 307-08, 342-45; McGrath Dec., Doc. 38-1, ¶ 26, PageID 418).

29. Thereafter, the subject of the felony arrest warrant, Allen Gurton, Sr., came downstairs fully dressed and wearing a coat and hat, turned around as directed, and permitted himself to be handcuffed. (McGrath Dec., Doc. 38-1, ¶ 27, PageID 418-19).

30. Allen Gurton, Sr., acknowledged to police at the scene that he was the subject of the arrest warrant, expressed no confusion over why they were there, and pleaded with Nathaniel to calm down and listen to the officers. (McGrath Dec., Doc. 38-1, ¶ 27, PageID 418-19; Asbury Dec., Doc. 39-1, ¶¶ 11-13, PageID 433-34).

31. Once Allen Gurton, Sr. was taken into custody, his son Allen Jr. was released at the scene and not charged with any offense. (McGrath Dec., Doc. 38-1, ¶¶ 20, 30, PageID 414, 420).

32. In arresting Nathaniel, Officer McGrath believed, based on what he had observed and experienced in attempting to take Allen Gurton, Sr. into custody, that there was probable cause to arrest Nathaniel for obstructing official business under Section 2921.31 of the Ohio Revised Code. (McGrath Dec., Doc. 38-1, ¶ 28, PageID 420; Doc. 38-4; Asbury Dec., Doc. 39-1, ¶¶ 6, 14, PageID 431, 434).

33. Nathaniel's conduct delayed the FAS officers in their effort to take Allen Gurton, Sr. into custody. (McGrath Dec., Doc. 38-1, ¶¶ 28-29, PageID 420; Asbury Dec., Doc. 39-1, ¶¶ 6, 11, PageID 431, 433-34).

34. The felony warrant for the arrest of Allen Gurton, Sr. carried with it the authority for the FAS officers to enter the Gurton Apartment that morning in order to execute the warrant. (McGrath Dec., Doc. 38-1, ¶ 17, PageID 412-13; Asbury Dec., Doc. 39-1, ¶¶ 9-10, PageID 432-33).

35. Nathaniel, who had been arrested and jailed on a number of occasions previously and had just recently been released from jail, was scheduled to work that day and was upset and angry at the police presence that morning. (Gurton Dep., Doc. 33-1, PageID 284, 301-02, 352).

36. Not only did Nathaniel take the time to grab his vape pen before coming to the front door, but Nathaniel was also dressed in the clothes he was going to wear to work when he opened the door. (Gurton Dep., Doc. 33-1, PageID 291-92, 323-24).

37. Later, after FAS officers took Allen Gurton, Sr. into custody, Sergeant Asbury spoke with Nathaniel about his complaints. (Asbury Dec., Doc. 39-1, ¶ 12, PageID 434).

38. Other than review Sergeant Asbury's investigation report approximately two weeks after Nathaniel's arrest by Officer McGrath that day, none of the other individual defendants had any personal involvement in the FAS officers' complained-of actions in this lawsuit. (McGrath Dec., Doc. 38-1, ¶ 32, PageID 421; Asbury Dec., Doc. 39-1, ¶ 14, PageID 434).

39. On May 10, 2022, Nathaniel's misdemeanor charge of obstruction of official business was dismissed for want of prosecution. Nathaniel's trial had been scheduled for that day. However, at approximately 8 o'clock that morning, Officer McGrath informed supervising officers that he had been called away to take part in a mandatory SWAT detail and could not testify at the trial. (McGrath Dec., Doc. 38-1, ¶¶ 33-35, PageID 421; Court Date Change Form, Doc. 38-5).

40. After being released from the Hamilton County Justice Center later that day, Nathaniel did not contact his employer to seek permission to work there again—not on that day and not at any time afterwards. Neither did he apply for work with any other employer at any time afterwards. (Gurton Dep., Doc. 33-1, PageID 257-261).

Respectfully submitted,

**EMILY SMART WOERNER (0089439)**
**CITY SOLICITOR**

| | |
|---|---|
| *s/ Shuva J. Paul* | *s/ Kimberly A. Rutowski* |
| Shuva J. Paul (0088484) | Kimberly A. Rutowski (0076653) |
| Kevin M. Tidd (0080957) | LAZARUS LAW, LLC |
| Assistant City Solicitors | The Huntington Center |
| 801 Plum Street, Suite 214 | 525 Vine Street, Suite 2210 |
| Cincinnati, Ohio 45202 | Cincinnati, Ohio 45202 |
| Phone: (513) 352-4551 | Phone: (513) 721-7300 |
| Email: shuva.paul@cincinnati-oh.gov | Email: krutowski@hllmlaw.com |
| Email: kevin.tidd@cincinnati-oh.gov | *Special counsel for officers in their individual capacity* |
| *Trial counsel for Defendants* | |

**CERTIFICATE OF SERVICE**

I hereby certify that on August **2**, 2024 a true and accurate copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed to those parties who are not served via the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s Shuva J. Paul*
Shuva J. Paul (0088484)