**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **NATHANIEL GURTON** | : | Case No. 1:23-cv-65 |
| | : | |
| Plaintiff, | : | Judge: Jeffery P. Hopkins |
| | : | |
| vs. | : | |
| | : | |
| **CIAN MCGRATH, et al.** | : | **PLAINTIFF'S RESPONSE TO** |
| | : | **DEFENDANTS' PROPOSED** |
| Defendants. | : | **UNDISPUTED FACTS** |
| | : | |

Plaintiff, Nathaniel Gurton, ("Plaintiff" or "Nathaniel"), pursuant to §II(F)(6)(b) of the Court's standing order governing civil cases hereby submits this response to the Defendants' Proposed Undisputed Facts (ECF#40-1), and the Plaintiff's proposed disputed issues of material fact.

**Introductory Note**

Nathaniel submits that Defendants' Proposed Undisputed Facts are largely inoperable. Contrary to the ordinary rules of pleading, Defendants do not limit each numbered paragraph to a single subject, and they routinely include multiple sentences with multiple clauses in each numbered paragraph. Defendants use conclusory statements and include conclusions of law. The result is that many of Defendants' proposed undisputed findings of fact are not susceptible to simple admission or denial.

**I.   Plaintiff's response to Defendants' Proposed Undisputed facts**

1. Nathaniel admits the accuracy of proposed fact number 1, however Nathaniel notes that there is no evidence that any of the Defendants had knowledge of these facts at the times relevant to this action.

   Nathaniel further states that the "Gurton Apartment" identified by Defendants is located at 1389 West Galbraith Avenue, Apt. #18 in the City of North College Hill. The Gurton Apartment is not located within the territorial limits of the City of Cincinnati.

2.  Nathaniel admits to proposed fact number 2, however denies there is any legal significance to the designation of the "Fugitive Apprehension Squad" or that the same constitutes a legally constituted entity. In all responses to Defendants' Proposed Undisputed Facts, Nathaniel deems any designation of the Fugitive Apprehension Squad as having the same significance as Cincinnati Police Department.

3.  Nathaniel admits.

4.  Nathaniel admits.

5.  Nathaniel denies that Defendants had "an understanding…that the apartment contained a number of individuals with histories of violent crimes and weapons charges." Nathaniel sought disclosure of such evidence possessed by Defendants in discovery and none was produced. The self-serving allegations in the McGrath and Asbury declarations are unsupported.

6.  Nathaniel admits.

7.  Nathaniel admits.

8.  Nathaniel admits in part. Nathaniel admits that some CPD officer knocked on the door, however it is unknown which officer knocked except by review of BWC video. Nathaniel admits that Nathaniel responded from his second floor bedroom, however denies that any of the Defendants knew that it was him responding at that time.

9. Nathaniel generally admits that an officer knocked and made various announcements as described here, however, it is unclear that these events took place in the sequence as described here.

10. Nathaniel admits.

11. Nathaniel admits the accuracy of this statement, but notes that it is not a complete description of the things Nathaniel did. (*See e.g.* ECF#33-1, PageID#268-69, 276)

12. Nathaniel admits.

13. Denied. Nathaniel came downstairs where and Allen, Jr. already was. The two eventually walked toward the door, but for the entirety of the time that Nathaniel was downstairs, a police officer had opened the window and had them at gunpoint, shouting commands. (ECF#33-1, PageID#265-66, 274-76)

14. Nathaniel admits.

15. Nathaniel denies. Asbury was positioned on the side of the apartment, but he gained a view inside only after he opened the window and broke the blinds that had previously impeded his view. (*See* BWC video: Asbury unredacted (CITY0062)[1]

16. Nathaniel denies. From the time that Nathaniel descended the stairs, and for the entirety of the time that Nathaniel was downstairs, a police officer had opened the window and had them at gunpoint, shouting commands. (ECF#33-1, PageID#265-66, 274-76)

17. Nathaniel denies. From the time that Nathaniel descended the stairs, and for the entirety of the time that Nathaniel was downstairs, a police officer had opened the window and had them at gunpoint, shouting commands. (ECF#33-1, PageID#265-66, 274-76)

---

[1] References to videos manually filed by Defendants (ECF#37) will be identified with the bates number assigned by the Defendants (e.g. CITY0062) and officer name. A table with the full file name of each such video is appended hereto.

3

18. Nathaniel denies. As depicted on BWC, Allen, Jr. opened the front door, and immediately upon his doing so, Defendant McGrath kicked the door open. (*See* BWC video: Jackson unredacted (CITY0064)

19. Nathaniel denies. It is assumed that this paragraph contains a typographical error in which the word "kept" is meant to be "kicked." (*See* BWC video: Jackson unredacted (CITY0064)

20. Nathaniel admits.

21. Nathaniel admits that he was behind Allen, Jr., and that he had a vape pen in his right hand which he held aloft. (*See* BWC video: Jackson unredacted (CITY0064))

22. Nathaniel submits that BWC accurately records the distance between himself and Defendant McGrath. Nathaniel denies that McGrath had nothing but a ballistic shield: he was holding a handgun and was pointing the same at Nathaniel. (*See* BWC video: Jackson unredacted (CITY0064))

23. Nathaniel admits that he continued to hold a vape pen in his hand, which was held aloft. Plaintiff denies that he was ever ordered to drop the vape pen. (*See* BWC video: Jackson unredacted (CITY0064))

24. Nathaniel admits.

25. Nathaniel denies. BWC video shows that Nathaniel was pushed back by the force of McGrath's physical assault. (*See* BWC video: Jackson unredacted (CITY0064))

26. Nathaniel denies. BWC video shows that McGrath seized Nathaniel and threw him to the ground using no technique other than blunt force, and that Nathaniel moved only reflexively to protect his body as he was thrown. (*See* BWC video: Jackson unredacted (CITY0064))

27. Nathaniel admits that McGrath tackled him, threw him to the ground and hit him with the shield, uttering profanities the entire time. Nathaniel specifically denies McGrath's claim that the contact with the shield was unintentional. (*See* BWC video: Jackson unredacted (CITY0064))

28. Nathaniel denies that his physical injuries were superficial. (*See* ECF#43-2) Nathaniel further states that he had a pre-existing cataract condition which was exacerbated by the assault, and that his vision has been diminished since the assault. (ECF#33-1, PageID#285-86) Nathaniel further states that to this day he suffers from emotional distress as a result of the assault which has affected his ability to work. (ECF#33-1, PageID#353-54)

29. Nathaniel admits.

30. Nathaniel admits that Allen Gurton, Sr. ("Allen, Sr.") cooperated and submitted to arrest. Nathaniel denies that Allen, Sr. "expressed no confusion." BWC video shows that he was asked if he had any warrants, and he responded "no." (*See* BWC video: Jackson unredacted (CITY0064) at 04:25)

31. Nathaniel admits.

32. Nathaniel denies. This paragraph contains both legal conclusions and descriptions of Defendant McGrath's subjective mental state which are contradicted by other evidence found on the BWC. (*See* BWC video: Jackson unredacted (CITY0064); Traufler unredacted (CITY0068))

33. Nathaniel denies. BWC video shows that the arrest warrant was successfully executed less than four minutes from the first knock on the door, and further, Nathaniel assisted by

procuring his father's cooperation. (*See* BWC video: Jackson unredacted (CITY0064); Traufler unredacted (CITY0068); Asbury unredacted (CITY0062))

34. Nathaniel denies. This statement is a conclusion of law, not a statement of fact. Furthermore, there were facial defects with the arrest warrant in that it inconsistently named the person who was subject to arrest. (ECF#43-4) A reasonable officer would have identified the defects in the warrant and acted to establish probable cause before attempting to execute.

35. This purported statement of undisputed fact addresses at least four separate subjects and is not susceptible to simple admission or denial. Nathaniel admits that he missed work and was fired because of the arrest. (ECF#33-1, PageID#257-58) Nathaniel admits that he had previously been arrested and had charges dismissed for failure to prosecute. Nathaniel admits that during the incident, he was scared and nervous, and didn't want to be shot by a police officer. (ECF#33-1, PageID#339-41) Later, he was angry because he was left bleeding with a wounded eye, he missed work, and was wrongfully arrested. (ECF#33-1, PageID#301).

36. Nathaniel denies that it took any meaningful period of time to pick up a vape pen. Nathaniel denies that he was fully dressed for work. Nathaniel had gotten dressed very quickly when police knocked at the door, so quickly that he hadn't taken the time to put on a shirt, only a sweatshirt/hoodie. (ECF#33-1, PageID#268, 276, 292, 298)

37. Nathaniel admits that Defendant Asbury presented himself as a supervisor who had authority to make determination upon Nathaniel's complaints about discourtesy, excessive force and wrongful arrest, and that Asbury represented that an investigation would be conducted. (BWC video; Asbury unredacted (CITY0061) at 00:30 -01:10);

(BWC video; Asbury unredacted (CITY0063) at 05:00).  Nathaniel submits that Asbury's assumption of that role was in direct violation of CPD policy 15.100.

38. Nathaniel denies.  Each of the Supervisory Defendants personally affirmed that the assault upon and arrest of Nathaniel was in compliance with CPD policy.  Each of the Supervisory Defendants permitted a conflict of interest where Asbury investigated an incident in which he authorized, participated in, and supervised.  Each of the Supervisory Defendants failed to discipline or even note that McGrath lacked jurisdiction to undertake a warrantless misdemeanor arrest outside the territorial jurisdiction of the City of Cincinnati.  Each of the Supervisory Defendants nonetheless acquiesced to and ratified the conduct of McGrath and Asbury.  (ECF#39-2)

39. Nathaniel denies.  Nathaniel admits that Defendant McGrath failed to appear for trial and that the case against him was dismissed.  However, documents produced in discovery show that McGrath participated in a volunteer SWAT detail, and failed to comply with CPD policy in requesting a continuance despite having twenty days advance notice of the trial.  (ECF#43-5, 43-6, 43-7, 43-8).

40. Nathaniel denies.  Nathaniel contacted his employer after being released from jail, and was advised that he had been terminated for his absence.  (ECF#33-1, PageID#257-58, 259-60)  Nathaniel eventually found other work (ECF#43-11), but the trauma of this experience affected his will and ability to work.  (ECF#33-1, PageID#353-54).

II.    **Plaintiff's Proposed Genuine Issues of Material Fact and issues for trial.**

41. The Court can take judicial notice of the fact that the Gurton Apartment is outside of the territorial jurisdiction of the City of Cincinnati. However, if the Court declines to do so, Nathaniel will present conclusive evidence of this fact.

42. Nathaniel complied with police and followed commands (ECF#33-1, PageID#351-52; (*See* BWC video: Jackson unredacted (CITY0064); Traufler unredacted (CITY0068); Asbury unredacted (CITY0062))

43. Defendant McGrath intentionally struck Nathaniel with a shield while Nantanial was in compliance with the various police officer's orders. (*See* BWC video: Jackson unredacted (CITY0064))

44. Nathaniel did not tell his brother, Allen, Jr. not to open the front door. (ECF#33-1, PageID#303-4, 31).

45. Defendant McGrath's failure to attend the trial was in violation of policy and was for the purpose of avoiding exposure of his wrongful arrest. (ECF#43-5, 43-6, 43-7, 43-8)

46. The officers violated Nathaniel's Fourth Amendment rights by forcing entry into the home without adequately announcing themselves. (*See* BWC video: Jackson unredacted (CITY0064)

47. The officers violated Nathaniel's Fourth Amendment rights by forcing entry into the home in reliance upon a facially defective search warrant. (ECF#43-4)

48. Policymakers failed to train, supervise, and discipline Defendants McGrath and Asbury and ratified their wrongful conduct. (ECF#43-3, 43-8, 39-2)

Plaintiff reserves the right to identify appropriate issues for trial in accordance with the this Court's local rules, standing orders, and the Federal Rules of Civil Procedure.

Respectfully submitted,

/s/ J. Robert Linneman
J. Robert Linneman (0073846)
SANTEN & HUGHES
600 Vine Street, Suite 2700
Cincinnati, OH 45202
(513) 721-4450
*Attorney for Plaintiff*
*Nathaniel Gurton*

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification to the following:

| | |
|---|---|
| Shuva J. Paul, Esq. | Kimberly A. Rutowski, Esq. |

/s/ J. Robert Linneman

J. Robert Linneman

696743.2

APPENDIX OF BODY WORN CAMERA VIDEOS

(Filed Manually [ECF #37])

 Asbury unredacted (CITY0061)
CPD220126000247-ASBURY-22684--01-26_0822_X6039A1SA (CITY 0061)

 Asbury unredacted (CITY0062)
file name: CPD220126000247-ASBURY-22684-2022-01-26_0814_X6039A1SA (CITY 0062)

 Asbury unredacted (CITY0063)
CPD220126000247-ASBURY-22684-2022-01-26_0830_X6039A1SA (CITY 0063)

 Jackson unredacted (CITY0064)
file name: 20547-2022-01-26_0814_X6039A1X5 (CITY 0064)

 Traufler unredacted (CITY0068)
file name: CPD220126000247-TRAUFLER-31202-2022-01-26_0813_X6039A1UJ (CITY 0068)

 Knapp unredacted (CITY0066)
file name (CPD220126000247-KNAPP-22694-2022-01-26_0814_X6039A1UD (CITY 0066))