UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **NATHANIEL GURTON,** | : | **Case No. 1:23cv65** |
| **Plaintiff,** | : | **Judge Jeffery P. Hopkins** |
| v. | : | **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| **CIAN McGRATH, et al.,** | : | |
| **Defendants.** | : | |

Defendants Cian McGrath, Nathan Asbury, Jason T. Voelkerding, Stephen Saunders, Lisa Davis, Eliot Isaac, and the City of Cincinnati (collectively "Defendants") tender this Reply Memorandum in further support of their Motion for Summary Judgment (Doc. 40). Defendants are entitled to judgment in their favor as a matter of law.

## REPLY MEMORANDUM

**I. Summary**

In response to Defendants' properly supported summary judgment motion (Doc. 40), Plaintiff Nathaniel Gurton ("Plaintiff" or "Nathaniel")[1] fails to meet his Rule 56 burden to set forth specific facts raising a genuine issue of material fact sufficient to defeat the Officers' qualified immunity or advance his municipal liability claims. He not only fails to contest key facts, but he also misapprehends his burden to identify clearly established law showing a constitutional violation. The record as developed shows that the Officers acted reasonably and are entitled to qualified immunity, and that the City did not act with deliberate indifference to Plaintiff's

---

[1] To avoid confusion, Defendants at times refer to the sole plaintiff in this action, 21-year-old Plaintiff Nathaniel Gurton, as "Nathaniel," to distinguish him more readily from his father and older brother, both of whom bear the same last name.

constitutional rights. The Court should grant Defendants' motion for summary judgment.

## II. Plaintiff Cannot Amend His Pleadings at This Late Date

Before addressing Plaintiff's failure to contest key facts and his failure to identify clearly established law, Defendants must start with Plaintiff's improper attempt to amend his pleadings at this late date. Plaintiff seeks to do so in response to Defendants' summary judgment motion in connection with Plaintiff's unlawful seizure, malicious prosecution, and false arrest claims. Specifically, Plaintiff contends that Officer McGrath had no legal authority to arrest Plaintiff at his residence because "1389 W. Galbraith is not within the territorial limits of the City of Cincinnati," but rather, "in the City of North College Hill." (Plaintiff's Response Memo, Doc. 44, PageID 543).

The problem with that contention is that Plaintiff has averred *the exact opposite* about where his residence is located since the very commencement of this action. In both his Initial Complaint and his Amended Complaint, Plaintiff locates his residence at "1389 Galbraith Avenue, #18"—in "Cincinnati, Ohio 45231." (Am. Compl., Doc. 16, PageID 148; Init. Compl., Doc. 2, PageID 33). In both versions of his complaint, Plaintiff even locates his residence in the "Mt. Healthy neighborhood of Cincinnati." (Doc. 16, PageID 150; Doc. 2, PageID 34). Plaintiff has never deviated from that position. Even in response to Defendants' interrogatories, Plaintiff supplied verified responses confirming the averment in his pleading that "1389 W. Galbraith" was within the City of Cincinnati. (Nathaniel Gurton Dep. Exh., Doc. 33-2, PageID 383, 393).

Plaintiff's unlawful seizure claims all along have been that his arrest was "without probable cause," that he "complied with the CPD officers' orders," and that he "did not obstruct any official business." (Doc. 16, PageID 157). It is now apparent that, after reviewing his deposition taken earlier this year, at which Defendants had Plaintiff review the extensive bodycam video depicting

2

Plaintiff's and the Officers' actions, Plaintiff felt the need to revisit his theories of liability without informing Defendants or the Court of his desire to further amend his complaint.

Fair notice matters. So do scheduling orders. After amending his pleadings once to include "supervisory" officials, Plaintiff did not amend his pleadings further or even seek to do so, leaving Defendants in the dark as to this new ground that Plaintiff raises for the first time in his response to their summary judgment motion. The Sixth Circuit is clear: "[t]he complaint must 'give the defendant fair notice of what the claim is, *and the grounds upon which it rests*.'" *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 127 (2007)) (italics added). The Court should reject Plaintiff's attempt to rewrite his complaint at this late stage.

**III. Plaintiff's Attempt to Rewrite His Complaint Is Futile In Any Event**

After attempting to rewrite his complaint, Plaintiff then goes on to attach incompetent hearsay evidence that he believes supports this improperly rewritten allegation, and he ignores Ohio statutes that render his improperly rewritten allegation meritless to begin with. Consequently, as set forth below, it would be futile for Plaintiff to even have properly amended his complaint.

A.  Plaintiff's "Evidence" Is Not Competent Evidence

With regard to the challenged grounds for his arrest, only does Plaintiff trample upon basic notions of fair notice, but he also seeks to introduce evidence that is unsworn and constitutes hearsay, which the Court thus cannot consider. Specifically, Plaintiff invites the Court to accept a screenshot of what appears to be an online map as competent proof showing a genuine issue for trial that Defendants violated his clearly established constitutional rights. (Doc. 44, PageID 543; Doc 43-1). No affidavit or declaration accompanies the offered screenshot exhibit. The screenshot was introduced in no prior deposition testimony. (Plaintiff took no depositions.) It is plainly

contradicted by what Plaintiff himself has alleged throughout this action in his pleadings and responses to discovery requests.

To be clear, Plaintiff took no depositions in this matter and, at his deposition taken by the City, this screenshot exhibit was not introduced by his counsel or counsel for any party. The parties did not stipulate or admit to it. Here, in his memorandum of opposition to Defendants' summary judgment motion, Plaintiff cites to nothing attesting to, or even authenticating, his offered exhibit. The Sixth Circuit has held that a district court may not consider unsworn, hearsay evidence in deciding whether or not to grant a motion for summary judgment. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 480–81 (6th Cir. 2008); *Pack v. Damon Corp.*, 434 F.3d 810, 815 (6th Cir. 2006). The Court should ignore the offered exhibit as incompetent evidence under Rule 56.[2] See FRCP 56(c)(1)(A) (requiring a party asserting a genuinely disputed fact to support the assertion by "citing to particular parts of materials in the record, including depositions, documents . . . affidavits or declarations, stipulation . . . admissions, interrogatory answers, or other materials").

    B. <u>Ohio Recognizes an Officer's Authority to Make An Arrest Outside Municipal Limits When Making an Arrest Within the Jurisdictional Limits of the Issuing Court</u>

Even if Plaintiff had gone about amending his complaint properly and marshaled competent evidence of where his residence was located, it would have been futile to do so. Plaintiff's contention that Officer McGrath had no legal authority to arrest him at his residence is simply wrong. The Ohio Supreme Court dealt with this issue a half-century ago. *See Fairborn v. Munkus*, 28 Ohio St. 2d 207, 211, 277 N.E.2d 227 (1971) ("We hold that a municipal police officer may make an arrest anywhere within the jurisdictional limits of the issuing Municipal Court, for a

---

[2] For similar reasons, the Court should reject Plaintiff's contention that the words "Verify Jurisdiction" that appear on the police dispatchers' Incident Detail Report (Doc. 43-9, PageID 519) somehow mean that Defendants "were admonished" that they were making an unlawful arrest outside of their jurisdiction. (Doc. 44, PageID 544). Plaintiff has no basis for asserting such a thing other than his own sheer speculation from looking at the Incident Detail Report.

violation of a municipal ordinance, upon a properly issued warrant."). The case law cited by Plaintiff in his brief (Doc. 44, PageID 543-44) does not apply to circumstances where the officer is *authorized to make an arrest outside municipal limits*, as the Officers here were.

Ohio Revised Code Section 2935.02, which Plaintiff ignores, authorizes officers holding arrest warrants to arrest accused persons "in any county in this state." Thus, when the Officers were at Nathaniel's residence to arrest his father, they were within the jurisdictional limits of the issuing court just like the officers in *Fairborn*.[3] The facts in *Fairborn* concerned an arrest under a warrant outside Fairborn city limits but within the jurisdiction of the issuing court. The court reasoned that if an officer with a warrant could go outside the *county* and make an arrest as provided in R.C. § 2935.02, then the officer has authority to make an arrest outside the *municipal limits*. The logic applies even when there is no arrest warrant. See *State v. Anderson*, 1st Dist No. CA74-06-0053 1975 Ohio App. LEXIS 7625, *3 (relying upon *Fairborn* to uphold an arrest of a speeding driver on charges of assault, obstruction of official business, and resisting arrest where the driver was apprehended outside municipal limits). Plaintiff fails to show that the Officers were plainly incompetent in proceeding to the residence he shared with his father to arrest his father on an outstanding felony warrant.[4]

Plaintiff would like the Court to upend clearly established law governing routine police

---

[3] Plaintiff attaches to his memorandum in opposition a redacted copy of the arrest warrant for Plaintiff's father and cites inconsistencies (e.g., "Gurton" spelled as "Burton" in one spot, the date of birth being redacted/unreadable) as proof that the Officers violate Plaintiff's—not Plaintiff's father's—constitutional rights. As Defendants pointed out in their initial memorandum, the subject of the warrant, Allen Gurton, Sr., expressed no surprise at the officers seeking his arrest and complied willingly with the arrest without protest. (McGrath Dec. 38-1, ¶ 27, PageID 418). Plaintiff's argument is more suited for a criminal defendant seeking acquittal or dismissal of a criminal indictment based on a procedural violation, and is unavailing here to show the Officers violated Plaintiff's clearly established rights when they arrested him for obstruction of official business.

[4] Accordingly, Plaintiff's argument that his municipal liability claims should proceed to trial because its Officers traveled outside City limits fails as a matter of law. (Doc. 44, PageID 554-55).

5

law enforcement actions explicitly authorized by the Ohio General Assembly. The logical conclusion to Plaintiff's preferred interpretation would be that family members in residences harboring felony arrest subjects may obstruct official business and resist arrest with impunity so long as they can later point out that the felony arrest was made outside municipal limits. The Court should reject Plaintiff's novel invitation.

As the remainder of this memorandum points out, it is Plaintiff's burden to set forth *specific facts* from the record showing that the Officers violated clearly established law and acted unreasonably on the day they arrived at the Gurton residence on January 26, 2022. Plaintiff fails to do so, and further fails to show why his municipal liability claims should advance.

## IV. Plaintiff Fails to Set Forth Competent Evidence, and Fails to Identify Any Clearly Established Law That Was Violated

In making meritless arguments with respect to the remainder of his claims, Plaintiff fails in his burden to prove the Officers are not entitled to qualified immunity. *See Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). Plaintiff fails to meet his burden by 1) failing to oppose Defendants' evidence with specific facts sufficient to show that the Officers were plainly incompetent in their conduct (the first prong of the qualified-immunity analysis); and 2) failing to identify clearly established law to defeat the second prong of the qualified-immunity analysis.

Plaintiff argues that whether he failed to show his hands when ordered, or whether he was afforded an opportunity to comply with their lawful orders, are materials fact in dispute. (Doc. 44, PageID 546). He also argues that whether Officer McGrath kicked the door open or kept it open with his foot is a material fact in dispute. (Id.) He challenges the Officers' testimony that waiting for as long as they did here—for more than two minutes after knocking and announcing themselves repeatedly, *after* an occupant from within acknowledged their presence—can put officers at risk when a felony arrest subject is inside. (Id.) Elsewhere, he contends that Sergeant Asbury's

6

noncompletion of a "form 648," aside from his completion of the Investigation Report, supports the view that the City ratified unconstitutional conduct. (Id., PageID 538-39, 553-54).

These are meaningless protestations in light of the federal claims Plaintiff seeks to advance. Most crucially, Plaintiff does not contest *how long* the Officers waited before they forcibly entered. He also *does not identify any clearly established law* to counter the law relied upon by Defendants in their initial brief showing that the Officers reasonably waited more than long enough under the circumstances. In their brief, Defendants cited numerous federal cases including Sixth Circuit precedent in *United States v. Pinson*, 321 F.3d 558 (6th Cir. 2003), supporting the proposition that the Officers here, as a matter of law, did not act unreasonably in waiting nearly two minutes before forcibly entering the Gurton residence. (Doc. 40, PageID 451). Defendants specifically pointed out how *Pinson* noted the courts "have not established a minimum time that officers must wait" between announcement and entry, but noting "a wait of no more than fifteen seconds between announcement and entry may be sufficient when a drug search warrant is executed." *Pinson* at 566. Plaintiff fails in his burden to show how the Officers here were on clear notice of any other standard other than this one, let alone one that was clearly established. Plaintiff's attempt to argue that his right against forcible entry under these particular circumstances was somehow clearly established is without merit.

Also meritless is Plaintiff's contention that his municipal liability claims must be allowed to proceed to trial. Plaintiff ignores the standard for showing a municipality "ratified" unconstitutional conduct. As the Sixth Circuit has noted, "[r]atification of a subordinate's action requires more than acquiescence—it requires affirmative approval of a particular decision made by a subordinate." *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993). Putting aside for a moment Plaintiff's failure to allege facts showing the Officers violated his clearly established

7

rights, Plaintiff needs to allege facts sufficient to prove that an official charged with making final policy expressly approved unconstitutional actions on the part of the Officers. Plaintiff has not done so here. He argues that Sergeant Asbury should not have been permitted to "investigate" Plaintiff's complaints, and that this somehow proves a custom of tolerance of unlawful behavior. (Doc. 44, PageID 553-54). He ignores that Sergeant Asbury merely initiated the inquiry, and that other officers in command positions conducted their own post-incident review and discerned no such unconstitutional conduct. (Investigation Report, Doc. 39-2, PageID 438-40).

In conjunction with pointing to immaterial or nonexistent facts, Plaintiff appears to be hoping that the Court will ignore the Supreme Court's prohibition against defining clearly established rights too generally. *See White v. Pauly*, 580 U.S. 73, 79 (2017) (warning against permitting "clearly established law" to be defined "at a high level of generality"). The Sixth Circuit has recognized the importance of narrowly and precisely defining clearly established rights. *See, e.g., Beck v. Hamblen Cty.*, 969 F.3d 592, 599–602 (6th Cir. 2020) (reversing denial of qualified immunity upon finding "no cases holding that police needed to seek immediate medical attention for *an individual in the circumstances they confronted*") (italics added).

Officers violate clearly established law when, at the time of the challenged conduct, the "contours of [a] right [are] sufficiently clear" that every "reasonable official would [have understood] that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Long v. Norris*, 929 F.2d 1111, 1114 (6th Cir. 1991) (noting that, for a constitutional right to be clearly established, "the law must be clear in regard to the official's particular actions in the particular situation"). Existing precedent must have placed the constitutional question "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Factual specificity is particularly important in the Fourth Amendment context because it can be difficult

8

"for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)). Plaintiff's reliance upon inapposite cases that do not apply to the execution of arrest warrants at a home ignores his burden to identify law that supports his position in the manner courts require. (Doc. 44, PageID 547-48).

**V. The Court May Properly Consider Video Evidence at The Summary Judgment Stage**

Plaintiff continues to allege that he was merely a "bystander" who was "tackled" and "beaten" "in the face with a riot shield" for not "cooperat[ing] quickly enough" with "contradictory and disorienting commands," then victimized further by a coverup, i.e., that Officer McGrath and Sergeant Asbury "contrived an offense to charge him with to cover [sic] the excessive force." (Doc. 44, PageID 533). He refers to himself and his older brother as mere "boys" who "literally could not simultaneously comply with all the commands that they'd been given." (Id., PageID 536). Plaintiff was 21 years old at the time. (Id., PageID 534). He insists that he "cried out in terror and confusion, but he still complied." (Id., PageID 537).

Fortunately, the Sixth Circuit has recognized that "a court may properly consider videotape evidence at the summary-judgment stage." *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010); *see also Dunn v. Matatall*, 549 F.3d 348, 350 (6th Cir. 2008) (affirming grant of summary judgment to moving party based upon undisputed facts recorded on videotape). As set forth in Defendants' initial memorandum with supporting declarations of the Officers (which contain links to the unredacted video), the video entered into the record here contradicts Plaintiff's hyperbolic characterizations and refutes Plaintiff's claims. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts

for purposes of ruling on a motion for summary judgment."); *see also Triplett-Fazzone v. United States*, No. 2:16-cv-1016, 2018 U.S. Dist. LEXIS 39177, at *15-16 (S.D.Ohio Mar. 9, 2018) (granting summary judgment in officers' favor after reviewing video dispelling claims of false arrest).

Elsewhere, Plaintiff maintains his injuries were so severe that it "alarmed Defendant Asbury enough that he immediately documented Nathaniel's injuries with photos." (Doc. 44, PageID 541). Plaintiff, who did not depose Sergeant Asbury or anyone else, impermissibly asks the Court to speculate that Sergeant Asbury was "alarmed."[5] No such reaction was documented because it did not occur, as is evident from Sergeant Asbury's declaration filed in support of Defendants' summary judgment motion, as well as from the video itself. On the contrary, Sergeant Asbury attested to reviewing Nathaniel's arrest with him, characterized his injuries as "abrasions" from Officer McGrath's "ballistic shield," and documented that he did so with Nathaniel's father "present next to him in the back seat of a police cruiser." (Doc. 39-1, PageID 434). Sergeant Asbury also attested to how Nathaniel's concerns were focused on "missing work" and how his father "counseled him repeatedly to calm down and to listen to [Sergeant Asbury] rather than interrupt and raise his voice." (Id.) All of this is evident upon review of the video.[6]

---

[5] Plaintiff also asks the Court to speculate impermissibly that Officer McGrath "cavalierly skipped his trial appearance" for a "voluntary" rather than "mandatory" SWAT detail that same day, and that this supposed conduct is proof of the City's ratification of an unlawful arrest. (Doc. 44, PageID 533, 554). Plaintiff, who did not depose Officer McGrath either (or anyone else for that matter), offers merely his own sheer speculation instead of competent evidence showing that Officer McGrath or any Officer conspired or "contrived" to deprive him of his constitutional rights. Plaintiff's failure to set forth competent evidence showing "ratification" sufficient for a municipal liability claim is described further above under Section IV (on pages 7-8).

[6] Plaintiff also writes: "Faced with the prospect of discipline or a civil claim for excessive force, Asbury and McGrath decided that they would arrest Nathaniel and charge him with Obstructing Official Business, a second degree misdemeanor under R.C. 2921.31." (Doc. 44, PageID 538). Once again, Defendants respectfully point out that Plaintiff is fabricating here because there is nothing in the record—Plaintiff does not even attempt to identify anything in the record because he cannot—to support that Asbury and McGrath "decided" to arrest Nathaniel based on such considerations.

As to Plaintiff's contention that Officer McGrath's actions exacerbated a pre-existing cataract condition Plaintiff had (Doc. 44, PageID 541), Plaintiff presented no records to that effect. On the contrary, he provided sworn responses to Defendants' discovery requests confirming he had sought no medical treatment after the incident. (Plaintiff's Discovery Responses, Doc. 33-2, PageID 385). Then, at his deposition, he confirmed that he neither required nor sought any additional medical treatment beyond the two band-aids he received at the scene, either at the scene or at the Hamilton County Justice Center where he was transported, or at other any time. (Gurton Dep., Doc. 33-1, PageID 342-45). In addition to all his other failures in bringing this action, Plaintiff has not shown that his injuries were more than *de minimis* under the circumstances in which the Officers were authorized to forcibly enter the residence to arrest Plaintiff's father. *See, e.g., Harrison v. Gregg*, No. 1:12-cv-005, 2013 U.S. Dist. LEXIS 136779, at *25 (Sep. 24, 2013).

## VI. Conclusion

The Defendants' summary judgment motion should be granted. There are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law.

Respectfully submitted,

**EMILY SMART WOERNER (0089439)**
**CITY SOLICITOR**

| | |
|---|---|
| *s/ Shuva J. Paul* | *s/ Kimberly A. Rutowski* |
| Shuva J. Paul (0088484) | Kimberly A. Rutowski (0076653) |
| Kevin M. Tidd (0080957) | LAZARUS LAW, LLC |
| Assistant City Solicitors | The Huntington Center |
| 801 Plum Street, Suite 214 | 525 Vine Street, Suite 2210 |
| Cincinnati, Ohio 45202 | Cincinnati, Ohio 45202 |
| Phone: (513) 352-4551 | Phone: (513) 721-7300 |
| Email: shuva.paul@cincinnati-oh.gov | Email: krutowski@hllmlaw.com |
| Email: kevin.tidd@cincinnati-oh.gov | *Special counsel for officers in their individual capacity* |
| *Trial counsel for Defendants* | |

12

**CERTIFICATE OF SERVICE**

I hereby certify that on November **1**, 2024 a true and accurate copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed to those parties who are not served via the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/ Shuva J. Paul*
Shuva J. Paul (0088484)